UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES H. BEAUCHMAN,

                  Petitioner,

   v.

UNITED STATES OF AMERICA,

                  Respondent.

Case No. C08-1462-JLR-BAT

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner James Beauchman is a federal prisoner who is currently confined pursuant to a 2005 judgment of this court. He has filed a motion under 28 U.S.C. § 2255 seeking relief from his confinement on the grounds that his counsel rendered constitutionally ineffective assistance during plea negotiations when he failed to adequately explain to petitioner the sentencing consequences of being convicted at trial. An evidentiary hearing was held with respect to that claim after which the parties were invited to submit post-hearing briefs and were permitted to submit supplemental exhibits.

This Court, having considered the evidence and arguments presented by the parties at the evidentiary hearing, the briefs of counsel, and the balance of the record, recommends the district court find that petitioner's counsel adequately explained the sentencing consequences of being

REPORT AND RECOMMENDATION - 1

convicted at trial. This Court further recommends, on the basis of this finding, that the district court conclude that petitioner was not denied the effective assistance of counsel during plea negotiations and that the district court therefore deny petitioner's § 2255 motion.

## BACKGROUND

On December 22, 2004, a federal grand jury in the Western District of Washington returned a five count indictment against petitioner and three others -- Michael Roberts, Christopher Knight, and Lorelei Clark -- charging drug and firearms offenses. (CR04-572-JLR, Dkt. No. 31.) Specifically, the indictment charged all four defendants with conspiracy to manufacture methamphetamine (Count I). (*Id*., Dkt. No. 31 at 1.) The indictment also charged petitioner and co-defendant Clark with possession with intent to distribute methamphetamine (Count 2), and with possession of firearms in furtherance of a drug trafficking crime; *i.e.*, conspiracy to manufacture methamphetamine. (Counts 4 and 5). (*Id*. at 2 and 3.) Finally, the indictment charged petitioner and co-defendants Roberts and Clark with maintaining a drug involved premises (Count 3).[1] (*Id*. at 2.)

On March 21, 2005, petitioner appeared before the Honorable Mary Alice Theiler, United States Magistrate Judge, for arraignment on the charges set forth in the indictment. (*Id*., Dkt. No. 94.) At that hearing, petitioner was advised of the charges against him and of the possible penalties for those charges. (*Id*.) Petitioner entered a not guilty plea to all charges. (*Id*.)

On March 22, 2005, petitioner, through counsel Robert Leen, filed a motion seeking to have the Honorable J. Kelly Arnold, United States Magistrate Judge, appointed to conduct a settlement conference. (*Id*., Dkt. No. 98.) In that motion, Mr. Leen represented to the Court that

---

[1] On August 3, 2005, the grand jury returned a superseding indictment which merely corrected a scrivener's error in Count 1 of the original indictment. The substance of the charges was unchanged. (See Dkt. No.132.)

REPORT AND RECOMMENDATION - 2

"[t]he defendant will admit guilt to criminal conduct for which he is responsible but not to the degree of culpability the government would seek to hold him accountable." (CR04-572-JLR, Dkt. No. 98.) Mr. Leen also noted that "[a] settlement judge could help the parties agree on the disposition of charges and agree on some relevant advisory guideline calculations." (*Id.*) Shortly after filing the motion for a settlement conference, Mr. Leen filed a motion to withdraw as petitioner's attorney and to have substitute counsel appointed. (*Id.*, Dkt. No. 103.) In his motion, Mr. Leen indicated that he was seeking to withdraw at petitioner's request. (*Id.*) The motion was granted and, on April 20, 2005, James Vonasch was appointed to represent petitioner. (*See id.*, Dkt. Nos. 109 and 112.)

On June 9, 2005, petitioner and co-defendant Clark, together with their attorneys and attorneys for the government, participated in a settlement conference conducted by Judge Arnold. (*See id.*, Dkt. No. 117.) At that conference, the government offered to recommend a 15 year sentence in exchange for petitioner's guilty plea. (*See* Dkt. No. 11, Ex. 1 at 1.) Petitioner declined the government's offer and elected to proceed to trial.[2] (*Id.*)

Petitioner's trial began on August 8, 2005, and on August 11, 2005, a jury found petitioner guilty on all five counts of the superseding indictment. (CR04-572-JLR, Dkt. No. 156.) The Court subsequently dismissed Count 5 of the superseding indictment after concluding that Counts 4 and 5 merged because both were firearms offenses based on the same underlying predicate offense. (*Id.*, Dkt. No. 164.) On November 28, 2005, petitioner was sentenced to a term of 240 months confinement on Counts 1 through 3, and to a consecutive term of 60 months on Count 4, for a total term of 300 months confinement. (CR04-572-JLR, Dkt. Nos. 175-176.)

---

[2] Petitioner's co-defendants all entered guilty pleas and all received sentences of eight years or less. (*See* CR04-572-JLR, Dkt. Nos. 84, 89, 119, 125, 167, and 184.)

REPORT AND RECOMMENDATION - 3

This sentence, though substantially higher than the sentence the government offered during plea negotiations, was well below the applicable guideline range of 360 months to life.[3]

Following petitioner's sentencing, Mr. Vonasch filed a notice of appeal on petitioner's behalf. (CR04-572-JLR, Dkt. No. 177.) Mr. Vonasch subsequently withdrew from the case and Jeffrey Ellis was appointed to represent petitioner on appeal.[4] On November 30, 2006, the United States Court of Appeals for the Ninth Circuit filed an unpublished opinion affirming petitioner's convictions. *United States v. Beauchman*, 208 Fed.Appx. 587 (9th Cir. 2006). The Ninth Circuit denied a petition for rehearing and for rehearing en banc on January 25, 2007, and the United States Supreme Court denied a petition for writ of certiorari on October 1, 2007. (*See* Dkt. No. 1 at 3.)

On October 1, 2008, petitioner, through counsel, filed the instant § 2255 motion, and on March 12, 2009, the government filed a response thereto. (Dkt. Nos. 1 and 11.) After reviewing the briefs of the parties, this Court concluded that an evidentiary hearing would be necessary in order to resolve petitioner's claim that Mr. Vonasch rendered constitutionally ineffective assistance during plea negotiations. (*See* Dkt. No. 13.) An evidentiary hearing was held on October 5, 2009. (*See* Dkt. No. 24.) At that hearing, petitioner testified on his own behalf. (*Id.*) Petitioner also called his mother, Patricia Murray, and his friend, Michael Moran, to testify on his behalf. (*See id.*) The government called attorney James Vonasch and Assistant United States Attorney Jill Otake to testify at the hearing. (*See id.*)

---

[3] The Court, at sentencing, made a finding that petitioner's total offense level was 38 and that his criminal history category was 5.

[4] While the record reflects that Jeffrey Ellis was the attorney appointed to represent petitioner on appeal, Steven Witchley, the attorney appointed to represent petitioner in these proceedings, was apparently the attorney who handled all of the briefing and oral argument on petitioner's appeal. (*See* Dkt. No. 14 at 2.)

REPORT AND RECOMMENDATION - 4

On October 8, 2009, the government moved to supplement the evidentiary hearing exhibits with recordings and transcripts of two telephone conversations that took place on October 2, 2009, between petitioner and his two witnesses, Ms. Murray and Mr. Moran. (Dkt. No. 25.) On October 26, 2009, petitioner moved to supplement the evidentiary hearing exhibits with recordings of telephone conversations that took place on October 6, 2009, between petitioner and his two witnesses, and with a letter from petitioner to Mr. Vonasch dated January 21, 2009. (*See* Dkt. Nos. 29 and 30.) The parties' motions to supplement were granted. (Dkt. No. 34.) The parties thereafter submitted their post-hearing briefs. (Dkt. Nos. 35 and 36.) The briefing is now complete and this matter is ripe for review.

## DISCUSSION

Petitioner asserts in his § 2255 motion that his trial counsel, Mr. Vonasch, rendered ineffective assistance when he failed to accurately explain the possible sentencing consequences of being convicted at trial and, thus, left petitioner with the understanding that he had nothing to lose by going to trial; *i.e.*, that if he were convicted at trial he would receive the same 15 year sentence that was offered by the government during plea negotiations. (Dkt. No. 1 at 1.) Petitioner contends that if Mr. Vonasch had properly explained the risks of going to trial, he would have accepted the plea offer. (*Id*. at 1-2.)

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id*. at 688, 691-92. When considering the first

REPORT AND RECOMMENDATION - 5

prong of the *Strickland* test, judicial scrutiny must be highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*.

The Ninth Circuit has made clear that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689). The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Strickland*, 466 U.S. at 693. The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id*.

Petitioner testified at the evidentiary hearing that Mr. Vonasch told him on numerous occasions that he could not be punished for exercising his right to go to trial and, thus, that he wouldn't get any more than the 15 years the government had offered during plea negotiations whether he went to trial or not. (Dkt. No. 28 at 37.) Petitioner further testified that it was never discussed with him at the settlement conference what would happen if he turned down the government's offer and proceeded to trial. (*Id*.) According to petitioner, he did not think he had a good case but proceeded to trial because he believed he had nothing to lose. (*Id*. at 39-40.) Finally, petitioner testified that had he known and understood that the low end of his sentencing range was 360 months, or 30 years, that he "absolutely" would not have proceeded to trial. (*Id*. at 48-49.)

Mr. Vonasch, during his testimony at the evidentiary hearing, emphatically rejected the suggestion that he would ever advise a client to proceed to trial because the sentence would be the same either way. (Dkt. No. 28 at 53.) Mr. Vonasch explained that "especially in federal courts, I just can't imagine anybody on the [CJA] panel saying anything like that. It is . . . not good advice. It is just not correct. . . . [I]t is understood that generally sentences are better when people plead[.]" (*Id*.) Mr. Vonasch also specifically denied that he ever told petitioner that if he went to trial and was convicted he would receive a sentence of 15 years. (*Id*. at 54-56. *See also* Dkt. No. 11, Ex. 1 at 2.) Mr. Vonasch explained that it was impossible to predict what sentence petitioner would ultimately receive, particularly in light of the fact that the case was assigned to a fairly new judge with no "track record" to use to predict. (Dkt. No. 28. at 56; Dkt. No. 11, Ex. 1 at 2.)

At the evidentiary hearing, Mr. Vonasch agreed that he thought petitioner's case was bad on the merits, but he also made clear that the decision of whether or not to go to trial was petitioner's to make. (*See id*. at 60-61.) Mr. Vonasch conceded that he did not remember exactly what he had advised petitioner to do with respect to the question of whether or not to proceed to trial, but he was unequivocal in his testimony that he had advised petitioner of all of the guideline factors and of the fact that the guidelines were going to be much higher than 15 years if he were convicted after a trial. (*See id*. at 61-62.) Mr. Vonasch also made clear his belief that petitioner understood the weaknesses in his case and the risks of going to trial, but was simply unwilling to accept the 15 year offer made by the government.[5] (*See id*. at 55 and 61-62.)

---

[5] Mr. Vonasch also stated in a declaration which was submitted in conjunction with the government's response to petitioner's motion, and which was admitted at the evidentiary hearing, that "[d]uring the settlement conference, all of Mr. Beauchman's options were discussed, including pleading guilty … I was convinced that Mr. Beauchman understood the risks of going to trial and he decided not to accept the offer." (Dkt. No. 11, Ex. 1.)

REPORT AND RECOMMENDATION - 7

As noted above, petitioner called two other witnesses at the evidentiary hearing to offer testimony in support of his ineffective assistance of counsel claim. The two individuals were petitioner's long-time friend Michael Moran, and petitioner's mother Patricia Murray, both of whom petitioner purportedly spoke to in 2005 regarding his case and his decision to proceed to trial rather than to plead guilty. And, in fact, Mr. Moran and Ms. Murray both testified at the evidentiary hearing that they had had telephone conversations with petitioner prior to his trial during which he explained to them that the government had offered him 15 years, but that he was proceeding to trial on the advice of his attorney because he understood that he had nothing to lose by doing so because he would get only 15 years regardless of whether he took the plea or not. (*See* Dkt. No. 28 at 14 and 25.)

While Mr. Moran and Ms. Murray both offered favorable testimony, petitioner managed to effectively undermine the credibility of both of his witnesses, and of himself, by coaching his witnesses prior to the evidentiary hearing on what to say. Evidence of petitioner's apparent tampering came to light following the evidentiary hearing when the government provided the Court with copies of taped telephone conversations between petitioner and Moran, and between petitioner and Murray, which took place on October 2, 2009, the Friday preceding the evidentiary hearing.[6]

When petitioner spoke with Mr. Moran on October 2, 2009, the following exchange took place:

> Beauchman: Now this is really important, what you are going to tell him. And what it is that you are going to tell them, which is already the truth … is that I talked to you a couple of times before I went to trial. And…
>
> Moran: Right.

---

[6] Petitioner was confined at the Federal Detention Center at SeaTac, Washington at the time these calls were made.

REPORT AND RECOMMENDATION - 8

Beauchman: Last time I talked to you, I told you that I was going, that I was going to go to trial and you asked me why was I going to trial and I told you because my lawyer told me I couldn't get anymore than the 15 years they offered me.

Moran: Right, because you had nothing more to lose, and you have everything to gain, there was nothing more to lose, by going to trial.

Beauchman: Right, right, right, and that I couldn't be punished for exercising my rights.

Moran: Ok.

Beauchman: Ok, now that is what he is going to ask you. Ok, because you are going to be our most credible witness.

Moran: Ok.

(Dkt. No. 25, Ex. B at 8.)

The fact that petitioner felt the need to provide Mr. Moran with such precise instructions on what to say raises serious questions about whether petitioner and Moran actually did speak prior to petitioner's trial about his decision to proceed to trial.

Petitioner also spoke with his mother by telephone on October 2, 2009. During that conversation, Ms. Murray expressed her concern that her testimony would not be deemed credible and then the following exchange occurred:

Murray: Man, she's gonna tear me apart.

Beauchman: No, you just don't start panicking or anything, alright? Uh, but just make sure to tell her that you know, were still living in Federal Way when I talked to you the couple of times.

Murray: Yeah.

Beauchman: Which you were, you know what I mean? I talked to you a couple of times before you moved but you were in the process of moving and whatnot.

Murray: Yep, yep.

REPORT AND RECOMMENDATION - 9

Beauchman: You know.

(Dkt. No. 25, Ex. B at 1-2.)

Later in the conversation between petitioner and his mother, just before they terminated their call, the following exchange took place:

> Beauchman: So just make sure that you know, you tell Steven that it was Federal Way you were still living at when I, when we talked.
>
> Murray: Yeah, Federal Way . . . where . . .
>
> Beauchman: I don't know.
>
> Murray: I think (inaudible)
>
> Beauchman: I think you were at an apartment.
>
> Murray: Apartment in Renton, well no . . .
>
> Beauchman: I thought you were still in Federal Way.
>
> Murray: I don't think so. Um, well maybe it was at that house in Federal Way, I'll just say it was a house in Federal Way.
>
> Beauchman: Yeah.
>
> Murray: Yeah, OK.
>
> Beauchman: Alright?
>
> Murray: Alright honey.

(Dkt. No. 25, Ex. B at 7.)

These exchanges suggest that Ms. Murray was unclear about where she was residing at the time she claims to have had the pretrial conversations with petitioner and that petitioner was aware he would need to establish at the evidentiary hearing that he knew where his mother was and he knew how to get a hold of her during the pretrial period at issue. This conversation raises serious questions about whether petitioner did, in fact, know how to contact his mother prior to

REPORT AND RECOMMENDATION - 10

trial. The conversation also reveals that Ms. Murray was apparently willing to adjust her testimony as necessary to support her son's claims.

In addition to the credibility concerns raised by these pre-hearing telephone calls, there were additional credibility issues pertaining, in particular, to Mr. Moran. Specifically, the Court notes that petitioner did not make his attorney aware of Mr. Moran, an apparently valuable corroborating witness, until days before the evidentiary hearing. Mr. Moran testified that he had known petitioner for 15 or 16 years, that he lived with petitioner between the years 2000 and 2002, and that he had had the same cell phone number for 10 years. (Dkt. No. 28 at 13 and 20.) It seems unlikely, given such testimony, that petitioner would have had any difficulty locating Moran well in advance of the hearing to ask him to testify.

Petitioner has the burden of demonstrating that he was denied effective assistance of counsel. Petitioner has given the Court no reason to question the credibility of Mr. Vonasch who stated in his testimony at the evidentiary hearing, and in his pre-hearing declaration, that petitioner was fully advised of the sentencing guidelines and of the risks of going to trial when he made his decision to reject the government's offer of 15 years and to proceed to trial. Petitioner, on the other hand, has given the Court every reason to question his credibility and that of his corroborating witnesses. This Court is convinced that Mr. Vonasch did, in fact, adequately explain the sentencing consequences of being convicted at trial to petitioner and that petitioner is solely responsible for the circumstances in which he finds himself now.

There is ample evidence in the record that petitioner was unwilling to accept the fact that the government deemed him more culpable than his co-defendants, all of whom received substantially lower sentences than the government offered petitioner during plea negotiations. Petitioner rejected the government's plea offer not once, but twice. It appears that only in

REPORT AND RECOMMENDATION - 11

hindsight does petitioner recognize that the 15 years offered by the government during plea negotiations was a very good offer indeed.

## CONCLUSION

Based upon the foregoing, this Court recommends the district court find that Mr. Vonasch adequately explained to petitioner the sentencing consequences of being convicted at trial, and that at no point did Mr. Vonasch advise petitioner he would receive the same 15 year sentence offered by the government during plea negotiations if he was convicted at trial. The Court further recommends, on the basis of these findings, that the district court conclude petitioner was not denied the effective assistance of counsel during plea negotiations and that the district court therefore deny petitioner's § 2255 motion. A proposed order accompanies this Report and Recommendation.

DATED this 20th day of January, 2010.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge